# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-091 (RJL) |
| | : | |
| v. | : | |
| | : | **FILED** |
| | : | |
| MARY E. GARNER | : | **JUN 2 6 2006** |

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, MARY E. GARNER, and the United States

agree and stipulate as follows:

Between September 1, 1990 and December 31, 2004, defendant MARY E. GARNER

("defendant") was employed by the United States Mint ("Mint") as a Management Analyst at the

Mint's headquarters in the District of Columbia. From late 1997 until February 2004, defendant

also served as the President and sole officer of the American Federation of Government

Employees (AFGE) Local 3653 ("Local 3653"), a labor union consisting of approximately 80

members. The business office for Local 3653 was within a common area for all employees in

the Mint's Office of Protection at 801 9th Street, N.W., in the District of Columbia. In her

capacity as President of Local 3653, defendant was responsible for maintaining and safeguarding

Local 3653's Riggs Bank checking account, number XXX931 on behalf of the union. From this

account, Defendant paid per capita dues to the national AFGE chapter as well as other

miscellaneous expenses incurred by the union. Defendant was the sole signatory on Riggs Bank

checking account number XXX931, which was located in the District of Columbia.

While serving as the President of Local 3653, defendant developed a scheme in which

-1-

she embezzled $12,194.78 in union funds by writing checks drawn on Local 3653's Riggs Bank

checking account made payable to cash, to Citibank, and to an insurance company. Defendant's

embezzlement scheme initially came to light in February 2004, after she lost her bid for re-

election as president of Local 3653. After losing the election, defendant closed Local 3653's

Riggs Bank account and transferred the balance to a new account at Sun Trust Bank. When the

new officers of Local 3653 asked defendant for bank records for Sun Trust Bank, she told them

that she could not provide the information at that time because she needed to go through things

first. Ultimately, defendant provided the union officers one Sun Trust Bank statement and

Riggs Bank Statements for 2003. Defendant failed to provide the union officers with ledgers,

cancelled checks, bank statements for 1998 - 2002, vouchers, receipts, deposit slips or financial

reports.

In March 2004, the new officers established a committee to conduct an audit of Local

3653's finances. During this audit, the committee discovered that defendant had written

numerous checks on Local 3653's Riggs Bank checking account for her own purposes that were

unrelated to union business. Defendant never reimbursed the local's account for these checks.

Further, it was expressly against Local 3653's bylaws for members or officers to use union funds

for non union-related business.

After the audit, the new officers referred this matter to the United States Department of

Labor ("DOL") and DOL's Office of Labor-Management Standards ("OLMS") within the

Employment Standards Administration began a criminal investigation. Investigators learned that

defendant embezzled $12,194.78 from Local 3653 by writing checks on the union's account

made payable to cash, to Citibank, and to State Farm Insurance Agency.

Specifically, on or between August 19, 2002 and August 26, 2002, defendant traveled to Denver, Colorado in the company of four individuals who were neither employees of the Mint nor members of Local 5363. Earlier in August 2002, Defendant had purchased $986.00 in airline tickets for these individuals using her government-issued Citibank credit card. While in Denver, defendant also used her Citibank credit card to pay for hotel rooms, meals, and a rental car. On or about September 8, 2002, Citibank mailed defendant a bill for $4,309.85, which covered the expenses she incurred during the Denver trip as well as the airfare for her four traveling companions.

Upon her return from Denver, defendant submitted a travel voucher to the Mint requesting reimbursement for her trip to Denver in the amount of $2,368.12. On November 14, 2002, the Mint reimbursed defendant's personal bank account in the amount of $2,368.12. Defendant paid her Citibank bill using a check drawn on her personal bank account in the amount of $2,300, and a check, number 1168, dated November 21, 2002, drawn on Local 3653's Riggs Bank checking account in the amount of $2,007.91. In furtherance of her scheme to defraud Local 3653, on or about November 21, 2002, defendant mailed check number 1168, drawn on Local 3653's Riggs Bank checking account number XXX931, to Citibank Government Commerce Services, P.O. Box 6575, The Lakes, Nevada 88901-6575.

The investigation also revealed that on other occasions, defendant used checks drawn on Local 3653's checking account to pay her Citibank credit card bill for charges she incurred on business travel, even though the Mint electronically reimbursed her for these expenses. During an interview with OLMS investigators on July 14, 2005, defendant stated that the four airline

tickets she purchased with her government Citibank credit card for the August 2002 Denver trip were for her two children, her boyfriend, and her boyfriend's child. Also during the interview, defendant could provide no valid explanation for why she had paid her Citibank bill with checks drawn on Local 3653's account when she had already been reimbursed by the Mint for these same expenses.

In total, defendant wrote $12,194.78 in checks drawn on Local 3653's Riggs Bank checking account number XXX931 for personal expenses that were not related to union business, as follows:

| Date of Check | Date Check Posted | Check Number | Amount | Payee | Memo |
|---|---|---|---|---|---|
| 5-23-2001 | 6-18-2001 | 1095 | $ 518.00 | Citibank | nothing written |
| 8-15-2001 | 8-15-2001 | 1099 | $1,000.00 | Cash | organizing/petty cash/supplies/services/ Shop Stewards |
| 10-1-2001 | 10-1-2001 | 150363 | $2,500.00 | Cash | nothing written |
| 1-24-2002 | 1-24-2002 | 1151 | $1,500.00 | Cash | nothing written |
| 1-31-2002 | 1-31-2002 | 1152 | $ 300.00 | Cash | nothing written |
| 2-20-2002 | 2-25-2002 | 1156 | $1,863.44 | Citibank | illegible |
| 3-28-2002 | 3-28-2002 | 1161 | $ 100.00 | Cash | nothing written |
| 5-10-2002 | 5-10-2002 | 1162 | $ 235.43 | State Farm | nothing written |
| 5-10-2002 | 5-10-2002 | 1163 | $1,900.00 | Cash | Dues-AFGE-money order |
| 5-21-2002 | 5-28-2002 | 1202 | $ 270.00 | Citibank | Govt.Card/Union Expenses |
| 11-26-2002 | 11-21-2002 | 1168 | $2,007.91 | Citibank | Union Travel to Council (Denver) |

## DEFENDANT'S ACCEPTANCE

I have read every word of this four-page statement of offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this statement of offense, and declare under penalty of perjury that it is true and correct.

Date: _____6/26/06_____

_____
MARY E. GARNER
Defendant

I have read every word of this statement of offense (consisting of four pages) and reviewed and discussed it with my client. I concur with her decision to stipulate to this statement of offense.

Date: _____6/26/06_____

_____
KENNETH M. ROBINSON
Attorney for the Defendant

-5-