**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.  06-091 (RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **MARY E. GARNER** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully requests that the Court sentence the defendant to fives years probation that includes nine months of home detention with electronic monitoring and restitution.

**I.  BACKGROUND**

On June 26, 2006, the defendant, Mary E. Garner, pled guilty to a one-count felony information charging her with a violation of 18 U.S.C. § 1341 (Mail Fraud).  During her plea colloquy, the defendant admitted that between September 1, 1990 and December 31, 2004, she was employed by the United States Mint ("Mint") as a Management Analyst at the Mint's headquarters in the District of Columbia.  From late 1997 until February 2004, the defendant also served as the President and sole officer of the American Federation of Government Employees (AFGE) Local 3653 ("Local 3653"), a labor union consisting of approximately 80 members. Local 3653's business office was located in the District of Columbia.  In her capacity as President of Local 3653, the defendant was responsible for maintaining and safeguarding Local 3653's Riggs Bank checking account on behalf of the union.  From this account, the defendant paid per capita dues to the national AFGE chapter as well as other miscellaneous

expenses incurred by the union.  The defendant was the sole signatory on the local's Riggs Bank checking account.

While serving as the President of Local 3653, the defendant developed a scheme in which she embezzled $12,194.78 in union funds by writing checks drawn on Local 3653's checking account made payable to cash, to Citibank, and to an insurance company.  The defendant's embezzlement scheme initially came to light in February 2004, after she lost her bid for re-election as union president.  After losing the election, the defendant closed Local 3653's checking account and transferred the balance to a new account at Sun Trust Bank.  When the new officers of Local 3653 asked the defendant for the records for the Sun Trust Bank account, she told them she could not provide the information at that time because she needed to go through things first.   Ultimately, the defendant provided the union officers one Sun Trust Bank statement and Riggs Bank Statements for 2003.  The defendant failed to provide the union officers with ledgers, cancelled checks, bank statements for 1998 - 2002, vouchers, receipts, deposit slips or financial reports.

During a March 2004 audit of Local 3653's finances, it was discovered that the defendant had written numerous checks on the local's Riggs Bank checking account for her own purposes that were unrelated to union business.  Defendant never reimbursed the local's account for these checks.  The new officers referred this matter to the United States Department of Labor ("DOL") and DOL's Office of Labor-Management Standards ("OLMS") began a criminal investigation. Investigators learned that defendant embezzled $12,194.78 from Local 3653 by writing checks on the union's checking account made payable to cash, to Citibank, and to State Farm Insurance Agency.

Specifically, on or between August 19, 2002 and August 26, 2002, the defendant traveled to Denver, Colorado in the company of four individuals who were neither employees of the Mint nor members of Local 5363. Earlier in August 2002, the defendant had purchased $986.00 in airline tickets for these individuals using her government-issued Citibank credit card. While in Denver, the defendant also used her Citibank credit card to pay for hotel rooms, meals, and a rental car. On or about September 8, 2002, Citibank mailed the defendant a bill for $4,309.85, which covered the expenses she incurred during the Denver trip as well as the airfare for her four traveling companions.

Upon her return from Denver, the defendant submitted a travel voucher to the Mint requesting reimbursement for her trip to Denver in the amount of $2,368.12. On November 14, 2002, the Mint reimbursed the defendant's personal bank account in the amount of $2,368.12. The defendant paid her Citibank bill using a check drawn on her personal bank account in the amount of $2,300, and a check, number 1168, dated November 21, 2002, drawn on Local 3653's Riggs Bank checking account in the amount of $2,007.91. In furtherance of her scheme to defraud Local 3653, on or about November 21, 2002, the defendant mailed check number 1168, drawn on Local 3653's checking account, to Citibank in The Lakes, Nevada.

The investigation also revealed that on other occasions, the defendant used checks drawn on Local 3653's checking account to pay her Citibank credit card bill for charges she incurred on business travel, even though the Mint electronically reimbursed her for these expenses. During an interview with OLMS investigators on July 14, 2005, the defendant stated that the four airline tickets she purchased with her government Citibank credit card for the August 2002 Denver trip were for her two children, her boyfriend, and her boyfriend's child. Also during the interview,

the defendant could provide no valid explanation for why she had paid her Citibank bill with checks drawn on Local 3653's account when she had already been reimbursed by the Mint for these expenses.

## II.  SENTENCING CALCULATION

### A.  Statutory Maxima

The maximum sentence for Mail Fraud pursuant to 18 U.S.C. § 1341 is twenty years confinement.  The maximum fine is $250,000.

### B.  Sentencing Guidelines Calculation

The Pre-Sentence Report (hereinafter "PSR") calculates the offense level under the United States Sentencing Guidelines at 10.  See PSR ¶ 32.  This includes the base offense level of six pursuant to U.S.S.G. §§ 2B1.1(a)(2), a four-level enhancement for "loss" amount between $10,000 and $30,000 pursuant to U.S.S.G. § 2B1.1(b)(1)( C); a two-level increase for an Adjustment for Role in Offense due to the defendant's abuse of a position of trust pursuant to U.S.S.G. § 3B1.3, and a two-level decrease for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1(a).  See PSR ¶ 24 - 32.  The defendant has a criminal history score of zero. Under the United States Sentencing Guidelines, the applicable sentencing range for an offense level of ten is six to twelve months within Zone B.

The PSR writer does not find factors indicating that a departure from the prescribed sentencing guidelines is warranted.  See PSR  ¶ 90.  For the reasons set forth, infra § III of this Memorandum, the government respectfully requests that Court sentence the defendant to a period of probation to include a term of nine months home detention with electronic monitoring. Further, the government respectfully requests that the Court order the defendant to make

restitution to the American Federation of Government Employees Local 3653, United States Mint.

## III.    GOVERNMENT'S SENTENCING RECOMMENDATION

In determining the appropriate sentence, the Court "shall consider....the need for the sentence imposed ....to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(D).

In this case, the defendant's conduct was serious in that she abused her position as president of Local 3653 to steal funds that belonged solely to the union. In her favor, however, is that she admitted her conduct to the agents investigating the case, agreed to an early plea of guilty, and has expressed remorse for her actions. Moreover, the defendant has no prior arrests or convictions and has promised to make restitution. For these reasons, the government is not opposed to a sentence of probation in this case. However, the government asserts that a significant period of home detention with electronic monitoring is also appropriate. Although the defendant claims she is "taking full responsibility for what she did," it appears that she is also attempting to justify her actions based solely on the stressful custody situation she was involved in with her parents. See PSR ¶ 23. Notably, the defendant fails to mention that many of the checks she wrote were for "cash" and that the majority of these checks pre-dated the onset of her custody problems with her parents. Thus, in recognition of the serious nature of this offense and in light of the defendant's apparent reluctance to accept full responsibility for her actions, the government respectfully requests that the Court sentence the defendant to a period of five years

probation and impose nine months home detention with electronic monitoring.

## IV.    RESTITUTION

As the PSR states, the Court shall order full restitution to the victims without consideration of the economic circumstances of the defendant.  See PSR ¶ 87, citing 18 U.S.C. § 3664(f)(1)(A).  As such, the government requests that the Court order that the defendant make restitution in the amount of $11,959.35 to the American Federation of Government Employees, Local 3653, United States Mint, which represents the amount of money the defendant obtained as a result of her fraudulent actions.

## V.    CONCLUSION

For the foregoing reasons, the government respectfully notes that it does not oppose a sentence of probation in this case, but requests that the Court also sentence the defendant to a period of nine months home detention with electronic monitoring.  Further, the government respectfully requests that the Court order the defendant to make restitution to the American Federation of Government Employees, Local 3653, United States Mint.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


Kim A. Herd, D.C. Bar No. 461615
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 616-9370

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a copy of the foregoing Motion was served via electronic filing this 10th day of September on Kenneth Robinson, Esq., 717 D Street, N.W., Washington, D.C. 20004.

_____
KIM A. HERD
Assistant United States Attorney